## WOOD v. FRAZIER.

### (Jackson.　April 25th, 1888.)

1. SUPREME COURT PRACTICE. *Assignment of errors. Rule 29.*

   Rule 29, requiring assignment of errors, is clearly within the scope of both the inherent power and statutory authority of this Court to prescribe rules of practice. It does not contravene § 3877 (M. & V.) Code, forbidding dismissal of appeals "for failure to assign reasons," which applies alone to courts of original jurisdiction, and could not, without constitutional objection, be applied to the practice of this Court.

   Code cited: §§ 3877, 5254 (M. & V.); §§ 3160, 4504 (T. & S.).

   Case cited and approved: Denton v. Woods, *ante,* p. 40.

2. SAME. *Same. Nature, office, and requisites of.*

   "AN APPEAL TO THIS COURT IS A SUIT UPON THE RECORD TO CORRECT ITS ERRORS."

   Appellant assumes the burden to make out his case—*i. e.,* to *definitely point out the errors* complained of. Rule 29 prescribes the proper *pleading*—a "*specific assignment of errors* to the rulings of the Court below."

   This pleading, like a declaration or bill, is bad, unless it shows a good cause of action UPON ITS FACE, without extrinsic aid.

   The contents of the record must be stated in the assignment so far as is necessary to enable the Court to see the grounds or reasons upon which the errors are assigned. The Court examines the record, not to *discover* appellant's *case* but to *test its truth.*

   Cited: Rule 29, 85 Tenn., 757.

   Cases cited and approved: Denton v. Woods, *ante,* p. 40; Loveman v. Taylor, 85 Tenn., 8.

3. SAME. *Same. Case in judgment.*

   The assignment of errors set out in this opinion, though citing pages of record, is bad, because it fails to show, *upon its face,* a good cause of action.

---

FROM HENRY.

---

Appeal from the Chancery Court of Henry County. A. G. HAWKINS, Ch.

T. C. FRYER and W. W. FARABAUGH for Wood.

COLE & SWEENEY and WARD & THOMPSON for Frazier.

TURNEY, C. J. By Rule 29, regulating the practice in this Court, 1 Pickle, 757, it is made the "duty of appellants or plaintiffs in error, their attorneys or solicitors, to file, on or before the first day of the term to which appeals have been, or may hereafter be, taken or are triable, specific assignments of error to the rulings of the Court below, as well as to errors of fact, pointing out *definitely* the error or errors complained of, and citing in the most concise manner the specific testimony relied upon, designating page of record.

"The same rules will be applied in the construction of this rule as are applied in the construction of the Act of 1883, creating the Commission of Referees."

In *Loveman* v. *Taylor*, 1 Pickle, 8, this Court, construing the Act of 1883, said:

"In order to entitle parties to a review of the facts, they must, by exception, point out the errors of fact clearly and distinctly by quotations from and citations of pages of record from which such errors may be readily discovered. It is not sufficient to state propositions or conclusions, and refer in uncertain terms to pages of the record for proof. The language or its substance relied on as showing the error or mistake must be given,

either in the exceptions or brief filed with them, otherwise the exceptions will be disregarded, and report confirmed."

In *Denton* v. *Woods*, 2 Pickle, 40, this Court said:

"The presumption is in favor of the correctness of the rulings and decisions of the lower Courts, and, under the established practice in this Court, unless error is affirmatively shown, an affirmance will be had."

On appeal to this Court the appellant becomes the actor, and takes upon himself to show affirmative error.

The assignments here are:

"Complainant assigns for error—

"*First*—The decree of the Chancellor allowing defendant, W. E. Cook, administrator of C. Frazier, to withdraw the sworn answer of his intestate, and for allowing W. D. Kendall, trustee, to withdraw his sworn answer and file demurrer to complainants' bill. See demurrer, p. 25; answer of C. Frazier, p. 16; answer of W. D. Kendall, pp. 19–21; original bill, pp. 2–7; deed of assignment, p. 6. Motion of defendants at previous term of Court to dismiss complainants' bill for want of equity on its face, which was disallowed by the Court. Also defendant's motion to discharge complainants' attachment, and for leave to file schedule of assets under oath, which was also disallowed by the Court. Pages 10–11.

Wood *v.* Frazier.

"*Second*—Because the Chancellor sustained the demurrer of W. D. Kendall, and as to him dismissed Complainants' bill. See decree, p. 27; bill, pp. 2–7; deed of assignment, p. 6; answer of C. Frazier, p. 16; answer of W. D. Kendall, pp. 19–21; demurrer, p. 25; bill of exceptions, p. 26.

" *Third*—Because the Chancellor refused to look to the answers, or either of them, for any purpose. See bill of exceptions, p. 26."

With this literal copy of the assignments, we will see whether there is a compliance with the rule. First, there is no reason or fact given why it was error to allow the withdrawal of the answer, nor why demurrer should not be filed, nor why the motion to dismiss the bill was not properly disallowed, nor why the motion to discharge attachment was not properly disposed of, nor why it was improper to refuse leave to file schedule of assets.

All such steps, motions, and orders are constantly had in the Chancery Court, and acted upon as the case requires.

The Court had jurisdiction, and no affirmative error is shown. We are presented with conclusions of counsel, unsupported by citations of fact against the judgment of the Court, presumed to be based upon the facts of the record.

This is a Court of appellate jurisdiction, and was constituted for the sole purpose of correcting errors, to do which it is necessary that the party

complaining shall point out the error. To make an assignment of errors effective for any purpose, the Court must have a statement of the case, and then the rulings of the lower Court upon that statement. It is an easy matter for the lawyer who knows his case to state it to the Court trying it. It is equally easy for him to state what the Court has done which, when applied to the facts, constitutes the error complained of, and quite as easy to give the substance of the matter of which the error is predicated with definite and specific reference to the name of witness, page of record, etc.; or, to state the question with the ruling of the Court, either in the admission or rejection of evidence or charge of the Court, pointing to the necessary matter of record to support the objection.

The assignments in this case do none of these things, but simply state in general terms that the Court erred in doing some things and in not doing others, without the slightest intimation of fact or reason or history of the case from which the conclusions of the solicitor had been drawn, and of course affording no aid to the Court in expediting business.

The assignments are abstract invitations to the Court to take the record and study it in all its bearings to find errors, while the rule, based upon the idea of the objects and purposes of a Court of last resort, requires the errors to be *pointed out.*

Wood *v.* Frazier.

The appellant, to be entitled to relief, must make out his case. The obligation on him to do so is as imperative as it is upon a plaintiff or complainant in an inferior Court to make a case in his declaration or bill.

The assignment in this Court is nothing more nor less than a declaration or bill reciting the grievances of the appellant, who is the plaintiff or complainant here. The rule requiring assignments is one of pleading, and while it may require more reading it requires less manual labor and less accurate legal skill than the preparation of pleadings in courts of original jurisdiction, as in the latter, counsel must be able to so frame his pleadings as to meet every possible phase and aspect of his case, while in this Court the case is complete, of record, and there is no possible contingency by which its character can be changed; no chance for surprise in the testimony; amendments are out of order; no correction by witnesses as to what they have sworn; no misleading of counsel by misrepresentations of clients. The whole case is of record, and the pleader has only to be patient and painstaking, and he can raise with unerring certainty the issues he wants to present. Why he may not with the record before him plead with greater certainty its breaches of law and fact than he can the breaches of a bond in an action of convenant in a court of law or the breaches of a trust undertaking in a court of chancery, we do not understand.

An appeal to this Court is a suit upon the record to correct its errors. Like all suits, there must be shown by the pleadings grounds for its institution, and if there is a failure to show upon the face of the pleadings grounds of action, it must fail without further steps.

To make the rule, or rather to declare it, is one of the inherent powers and duties of the Court. When the Constitution conferred upon the Court the authority to try and determine causes, it, at the same time, as an indespensable incident to such power, or, to put it more correctly, as part of it, gave the authority and power to adopt such means as will facilitate and perfect investigation and decision. The general authority to do embraces also an authority to determine the means of doing. This power belongs alone to the Court, and is without the control or revision of other governmental departments. We might as appropriately undertake to prescribe rules for the guidance of the Governor or Legislature as either of them for us. Each is alone capable of meeting and providing for occasions as they arise in the changes constantly occurring.

The lawyer who appeals certainly knows why he does so. The rule only requires that he shall state to us, in historical form, why he did so, confining himself to the errors of which he complains.

The condition of the docket demanded a change in practice in this Court. The State is increasing in wealth and population; its resources are being

Wood *v.* Frazier.

not only rapidly developed, but discoveries of new ones are being constantly made; every interest is alive with energy and enterprise, and in consequence litigation is on growth *pari passu.*

At the last term of this Court the docket was cleared. On the meeting at the present term we found about four hundred cases, showing a greater number of appeals than has ever been at any one time in the history of the Court. Under the former practice it would have been impossible to have cleared the docket. It is not an uncommon occurrence for records to contain several hundred pages, and sometimes reaching thousands, but presenting questions within comparatively small compass when pointed out. If the Court must read and master these unnecessarily large records, often containing impertinent matter, to discover one or two or a half-dozen suggested errors, it loses just that much time from its other and more legitimate business, and the docket will grow beyond its management.

To cure such evils the rule was adopted. It enables the Court to dispose of more business. It brings us at once to the questions involved, and while it intensifies, it certainly shortens the labor of Court and counsel in the trial of causes. It does not lessen the labor of the Court, but multiplies the results of its efforts to properly dispatch business.

The retired predecessors of the present bench were as faithful, laborious, and painstaking as a

Court could be. To them were always accorded industry, honesty, and capacity, with an anxious desire to relieve an overladen docket. They did not succeed because of adherence to the old methods of practice—methods which did not progress with the state and condition of the commonwealth. With the present method, that Court, with the same amount of labor, could, and would, have reduced the dockets to cases of the present, instead of being constantly confronted with records of six, eight, and ten years' standing. The law is progressive, and upon its prompt enforcement depends every interest in the land. Until communities have the assurance that they may command a ready redress of grievances, and protection of rights, they will lack energy and thrift and respect for law. Therefore, it behooves the Courts to employ every fair and legitimate means of enforcing the law.

It is expected—rightfully expected—of the Courts that they will do their whole duty in declaring and enforcing such rules as will secure speedy trials and just judgments in all causes coming before them. Such is the purpose of the rule before us. Parties are required to make simple statements of the questions they want decided, with the substance of such record matter as raises them and suggests their solution. Courts must keep abreast with the public welfare.

The statutory provision that "no appeal shall be dismissed by the Appellate Court for failure to

assign reasons for the appeal," does not interfere with the principles of this opinion. It is intended for the government of courts of original jurisdiction only. Code, § 3160 (T. & S.), § 3877 (M. & V.).

But if it did apply to this Court, and was authorized by the Constitution, it would still not be in the way, as no appeals are ever dismissed for the reasons given by the act, but all judgments and decrees are either affirmed, modified, or reversed, so as to make the action of this Court operative on the rights of parties. Further, admitting for the time the constitutionality of the act, we see from § 4504 (T. & S.) Code, and § 5254, (M. & V.) Code, it does not apply to this Court. The latter sections provide: "The Supreme Court may make rules of practice for the better disposal of business before it."

As already suggested, however, we do not rely on statutes for authority for the rule. The Court alone is authorized to make its rules, and any legislative mandate proposing to regulate the practice of this Court in this particular, would be an unauthorized interference with our duties, and should, of course, be disregarded.

When the rule was announced, the profession was made to understand that for a time it would be liberally construed, so as to enable all to prepare for compliance with it; that we would gradually come to its strict enforcement. We have been practicing upon that assurance.

Hereafter we will expect the bar to conform to its requirements, thereby making more accurate lawyers of themselves and safer and better Judges of us.

While satisfied with the decree upon the merits, we prefer putting the decision upon the insufficiency of the assignments of error and questions made in argument upon the rule, that attention may be called to the rule, its purposes, meaning, and scope, and the authority upon which it is based.

Knowing as we do the character and capacity of the author of the assignments, we are constrained to believe he made the most of the record before him.

The assignments are fatally defective in making a case.    The decree is affirmed with costs.