## TYNER GILPIN v. J. B. COLT COMPANY.

Middle Section.　January 28, 1928.

Petition for Certiorari denied by Supreme Court, July 14, 1928.

R. C. Boyce and John E. Wills, of Nashville, for plaintiff in error, Gilpin.

Campbell & Martin, of Nashville, and Wilfred C. Roszel, of New York, for defendant in error, Colt Company.

CROWNOVER, J.　This was an action by J. B. Colt Company, a corporation, on a note for $308.15, interest and attorney's fees, exe-

cuted for a carbide lighting plant, which action was originally brought before a Justice of the Peace, and was appealed to the circuit court, where it was tried by the judge and a jury.

The defendant Gilpin denied liability, and set up defenses of alleged breach of an express warranty, in that the plant used more carbide than was represented, and also set up a breach of an implied warranty in that the plant was not suitable for the purposes for which it was bought, in that it would not heat the hot plate and iron.

The trial judge directed a verdict for the plaintiff J. B. Colt Company, and a judgment for $376.35 principal, interest and attorney's fees, was rendered in favor of the said Colt Company. The defendant's motion for a new trial was overruled, to which he excepted, appealed in error to this court, and has assigned four errors, which errors, when summarized, all go to the proposition that the court erred in directing a verdict as there was material evidence to show breach of the warranties.

The facts necessary to be stated are, that defendant Gilpin, on January 24, 1924, ordered the carbide lighting plant from the Colt Company at the price of $308.15, the plant to be shipped to defendant and to be installed by him. The defendant entered into another contract with one W. K. Wells, in which Wells was to install the plant for $22. The plant was installed by Wells on April 1, 1924, on which date the defendant signed a statement that the plant was properly and satisfactorily installed. The defendant also executed the note for $308.15, sued on in this cause, which note matured on February 1, 1925.

The order signed by defendant on January 4, 1924 contained the contract of sale between the parties, and is in part as follows:

"Warranty: It is agreed that in accepting this order the company warrants the generator furnished to be automatic in action, and of good metal and workmanship, and that it is listed as 'standard' by Underwriters Laboratories established and maintained by the National Board of Fire Underwriters."

. . .

"It is expressly agreed by the purchaser that no solicitor, other agent or representative of the company, has made any statements, representations or agreements, verbal or written (1) providing for any extension of time for the payment of the note or notes, or of the contract price above mentioned or any part thereof, or for any modification whatsoever in any terms of said note or notes, or (2) as to the amount of carbide that will be required for use in the operation of the generator purchased hereunder, or (3) providing for a trial use or trial period for said generator, or any other condition than the absolute sale of said generator and other material.

"It is hereby further expressly agreed by the purchaser that this instrument contains all the terms, conditions and agreements between the purchaser and the company, and that no solicitor, other agent or representative of the company has made any statements, representations or agreements, verbal or written, modifying or adding to the terms, conditions and agreements herein set forth, or any of them, whether the same are specifically mentioned in this order or not.

"The company does not install the generator or appliances."

The proof shows that defendant used and operated the plant from April 1, 1924 until in December, 1924. In January, 1925, defendant wrote the company, complaining that the plant used too much carbide, that the agent had stated that 200 pounds of carbide was sufficient to run the plant from nine to eleven months, whereas he had used 400 pounds of carbide in eight months, thus making the cost of operation prohibitive. Other correspondence ensued, and on February 21, 1925 the Colt Company insisted on payment of said note, but the defendant refused to pay and insisted that the plant be removed from his premises, that it was of no value as it produced about one-third of the amount of light claimed for it, and that it was not as represented.

After a careful review of the record, we are of the opinion that the assignment of errors should be overruled. It was expressly agreed that there were no representations, statements or agreements as to the amount of carbide required for use in the operation of the plant; hence there was no breach of warranty as to this matter, and there is nothing in this proposition.

We also think that the defendant cannot avail himself of the defense of a breach of the implied warranty that the plant was not suitable for the purpose for which it was bought, in that, it would not heat the hot plate or the iron: (1) Because we do not think that there was any competent proof to show that it was not suitable. The mere fact that it did not heat the hot plate or the iron is not of itself any evidence that the plant was not suitable for that purpose. The defendant says that it may have been because it was not properly installed, or because the pipes were too small. It may have been due to these or other causes not explained in the evidence, but the company is not responsible for the installation as the defendant took that upon himself. (2) Because the defendant failed to give notice to the seller of the breach of warranties within a reasonable time after he knew, or ought to have known of the breach. In fact, he gave the company no notice of the alleged breach of implied warranty here relied upon. See Uniform Sales Act of 1919, chapter 118, section 49; Wildman Mfg. Co. v. Davenport Hosiery Mills, 147 Tenn., 551, 249 S. W., 984; 2 Williston on Sales, sec. 484a, pages 1258-1261.

Before our Sales Statute Act of 1919, chapter 118 was passed in Tennessee, there was an implied warranty of fitness of property bought for a special purpose. See Southern Brass & Iron Co. v. Exeter Machine Works, 109 Tenn., 67, 70 S. W., 614; but such questions are now governed by the sales statute, and now, where the goods have been delivered to the buyer, he cannot rescind the sale if he fails to notify the seller within·a reasonable time of the election to rescind, or if he fails to return or offer to return the goods to the seller in substantially as good condition as they were at the time the property was transferred to the buyer. See Sales Act 1919, chapter 118, sec. 69, sub-sec. 3; Hawkins v. Byrn, 150 Tenn., 1, 261 S. W., 980.

An express warranty or condition does not negative a warranty or condition implied under the sales act, unless inconsistent therewith. See Sales Act 1919, chapter 118, sec. 15, sub-sec. 6; Somerville v. Gullett Gin Co., 137 Tenn., 509, 194 S. W., 576; 35 Cyc., 380, 392.

There was no proof that the defendant returned or offered to return the property in as good condition as when sold, as required by the statute, although he made a belated demand that the Colt Company remove the plant from his premises (2 Williston on Sales, 610, p. 1529), and the fact that he gave no notice of the breach was undisputed. Hence, we think the trial court was not in error in peremptorily instructing the jury to return a verdict in favor of the plaintiff Colt Company, as the notice of the breach was insufficient, as it was a mere complaint about the amount of carbide used, and was not given within a reasonable time as required by the statute. See Wildman Mfg. Co. v. Davenport Hosiery Mills, supra.

It results that all the assignments of error are overruled and the judgment of the lower court is affirmed. A judgment will be entered in this court in favor of J. B. Colt Company and against defendant Tyner Gilpin, and the surety on his appeal bond for the amount of said judgment, and interest thereon, together with the cost of the cause, including the cost of appeal, for all of which execution may issue.

Faw, P. J., and DeWitt, J., concur.