WEBER IRON & STEEL COMPANY, Plaintiff in Error, v. S. B. WRIGHT, Defendant in Error.

Middle Section. March 19, 1932.

Petition for Certiorari denied by Supreme Court, June 4, 1932.

Shepherd, Carden, Curry & Levine, of Chattanooga, for plaintiff in error, Weber Iron & Steel Co.

C. C. Moore, of Chattanooga, for defendant in error, Wright.

CROWNOVER, J. This was an action to recover damages for breach of an implied warranty of fitness of second-hand iron pipe, purchased by plaintiff for the purpose of conducting water from a spring to his residence, in that, the water flowing through the pipe became discolored and polluted, and was unfit for use.

The action originated in a justice of the peace court, where a judgment was rendered in favor of the plaintiff for $90, the cost of the pipe being $60 and the expense of laying same $30. From this judgment defendant appealed to the Circuit Court of Hamilton County, where the case was tried by the judge without a jury, and a judgment was rendered for that amount.

Motion for a new trial having been overruled, defendant has appealed in error to this court and has assigned as errors that the trial court erred:

"(1) Because the verdict is against the law as applied to the evidence in this case.

"(2) Because the verdict is against the weight of the evidence in this case.

"(3) Because the judgment is excessive."

The Weber Iron & Steel Company, of Chattanooga, is engaged in the business of selling second-hand iron and steel articles and is known as a "junk dealer." It sells, among other things, second-hand iron and steel pipe.

S. B. Wright, in August, 1930, purchased 1325 feet of pipe from the Weber Iron & Steel Company for the purpose of bringing water from a spring on Signal Mountain to his summer home on the side of the Mountain. Prior to this time he had purchased second-hand pipe from this company a number of times and found it satisfactory for the purpose for which it was purchased. He went to the Company's "Yard" and told the man in charge, Cassell, that he wanted some pipe for the purpose of running a water line to his home. He did not tell Cassell that he would rely upon his skill and judgment to select pipe suitable for the purpose, but he testified that he did rely upon Cassell's skill and judgment and did not inspect the pipe. He saw some second-hand one inch iron pipe in racks in the yard and looked at it from his car, but did not get out of his car and inspect it. Cassell took some pipe from the rack and showed it to him and he asked to have 1325 feet measured and delivered to him at his home on Signal Mountain, for which he paid. No express warranty of the pipe was made, but Cassell told Wright that if he found any pipe that was split or leaked the Company would be glad to replace it.

When the pipe was installed and the water turned into same, it was discovered that the water when it reached the house was muddy, had an offensive odor and was polluted, although the water in the spring

was clear at the time it entered the pipe. The plumber allowed the water to run through the pipe four or five hours to see if its condition would improve, but it did not. Wright allowed the water to run through the pipe for three weeks or more to see if it would clear up, but it did not. Wright testified that the water was unfit for use and the pipe worthless.

After three or four weeks' trial Wright gave notice to the Company that the pipe was unfit for use. He verbally notified Cassell and later sent a written notice to the Company, complaining of the pipe, and the Company wrote him to return the pipe and it would refund the price, but he notified the Company that it could come and get the pipe.

Wright paid $60 for the pipe and the cost of installing it was $30.

When the case was called for trial in the Circuit Court the plaintiff and defendant orally made the following statement of their case:

"Mr. Moore: This is an action for breach of implied warranty in the sale of some second-hand two inch pipe, predicated on the provisions of the statute that if the buyer gives notice of the use, it is implied warranty. That is the theory of our case.

"Mr. Levine: I think it is a good idea to state in advance briefly the case. The substance is, Mr. Wright is suing for a refund of some money paid for pipe which he bought from a junk shop, claiming it to be defective pipe, and we rely on his having bought second-hand stuff without warranty."

Plaintiff Wright's case is based upon sub-sec. 1 of sec. 15 of the Uniform Sales Act, chapter 118 of the Acts of 1919 (Code sec. 7208), which is as follows:

"Where the buyer, expressly or by implication, makes known to the seller the particular purpose for which the goods are required, and it appears that the buyer relies on the seller's skill or judgment (whether he be the grower or manufacturer or not), there is an implied warranty that the goods shall be fit for such purpose."

There may be an implied warranty of fitness for the purpose for which second-hand goods are bought, D'Armond v. Baker, 10 Tenn. App., 28, and an express warranty does not negative an implied warranty under the Sales Act unless inconsistent therewith. Gilpin v. J. B. Colt Co., 7 Tenn. App., 630.

There is no evidence in the record, except by implication, that Wright informed Cassell that he would rely on his judgment to select pipe suitable for a water line into his house, or that Cassell selected or recommended the pipe. The only testimony on this subject is that above stated and that of Wright as follows:

"By Mr. Moore: Q. State whether you relied upon their skill and judgment to give you pipe suitable for that use? A. Yes, sir."

"Where a buyer makes known to the seller the particular purpose for which he buys and relies upon the seller's skill or judgment, a warranty of fitness for purpose arises. It is apparent that there must be a superior knowledge of the goods on the part of the seller, which is the basis of his skill and judgment, and the buyer must inform the seller either expressly or impliedly that he is relying upon that skill and judgment. In addition to this there must be actual reliance by the buyer." Mariash on Sales, 324, sec. 119; 55 C. J., 762, sec. 731; 1 Williston on Sales (2 Ed.), sec. 235.

"The two tests usually laid down to determine whether such warranty is made are, first, Did the buyer make known to the seller the special purpose for which he buys? and, second, Did he justifiably rely upon the seller's judgment?" Mariash on Sales, 325, sec. 120.

"The question of reliance is somewhat more difficult. Reliance involves a state of mind on the part of the buyer, which must be ascertained from the circumstances of the cases." Mariash on Sales, 327, sec. 121.

"The burden of showing that he has made known his purpose and that he has relied upon the seller is on him who claims the existence of an implied warranty. If either of these two facts do not appear he fails in his claim." Cudahy Packing Co. v. Narzisenfeld, 3 Fed. (2d), 567.

We think there is enough evidence that Wright informed the dealer of the purpose for which he wanted the pipe, but we do not think the facts are sufficient to imply a warranty of fitness, as Wright had an opportunity to inspect the pipe he purchased.

Ordinarily, where the purchaser has an opportunity to inspect the thing purchased, no warranty of fitness will be implied if the defect is such as would have been discovered by such inspection. Subsec. 3 of section 15 of the Uniform Sales Act provides:

"(3) If the buyer has examined the goods, there is no implied warranty as regards defects which such examination ought to have revealed."

"Generally after the buyer makes a personal inspection of the goods he will not be deemed to have relied upon the seller, and in fact the section itself expressly provides that in such case there shall be no warranty. The section goes even further, and provides that there will be no warranty as to any defect which the examination should have revealed, even though not

actually discovered.'' Mariash on Sales, 328, sec. 121; 55 C. J., 718.

''Where inspection is had or may be had at the time the bargain itself is made, the tendency in the United States seems to be to hold that at least, in the absence of guilty knowledge on the part of the seller, the inspection precludes the existence of any implied warranty, regardless of whether the defect is latent. In some cases, however, reliance is placed on the fact that inspection would reveal the defect.'' 2 Williston on Contracts, 1859, sec. 988.

''In much the same manner as actual inspection or test, the presence of the goods at the time of the sale, open and available to inspection and examination by the purchaser, prevents the implication of warranties with regard thereto, and even though no inspection is actually made, at least where the seller resorts to no artifice to prevent a fair examination. The mere fact that an examination would be attended with some inconvenience or would consume considerable time does not avoid the operation of the rule; in order to be thus effective an inspection must be wholly impracticable.'' 55 C. J., 718-9-20, sec. 704.

''The maxim of 'caveat emptor' is based on the principle that the purchaser buys at his own risk, unless the seller gives an express warranty, or unless the law implies a warranty from the circumstances or the nature of the thing sold, or unless the seller be guilty of fraudulent misrepresentation or concealment in a material inducement to the sale, and it applies to sales of personalty where the buyer has an opportunity to inspect and the seller is guilty of no fraud.''

. . . . .

''That it was impracticable for buyer given opportunity for inspection to examine all eggs of quantity sold, because of time required, held not to prevent application of rule of caveat emptor, since purchaser should have insisted on a warranty if complete inspection was inconvenient.''

. . . . .

''If the vendor affords the vendee opportunity of inspection, as was done in this case, and the vendee inspects a portion of the goods which he calls for and fails to examine the remainder which he is given the opportunity to inspect, he cannot claim in the absence of an express agreement to that effect, that what he did examine constituted a 'sample' to which the remainder, which he might have examined, was warranted to conform.''

. . . . .

''In Barnard v. Kellogg, 10 Wall., 383, 389, 19 L. Ed., 987, which involved a purchase of bales of foreign wool, the buyer

inspected only four of the bales, although he was offered the right to inspect all of them. 'If he wanted to secure himself against possible loss, he should either have required a warranty or taken the trouble of inspecting fully all the bales. Not doing this, he cannot turn round and charge the seller with the consequences of his own negligence. . . . It will not do to say that it was inconvenient to examine all the bales, because if inconvenient it was still practicable, and that is all, as we have seen, that the law requires.' The rule of caveat emptor was applied. That rule governs this case. If the purchaser when given the opportunity to examine all the cases did not avail itself of it except to a limited extent, it might have insisted on a warranty for its protection. But no such warranty was asked or given.'' Cudahy Packing Co. v. Narzisenfeld, 3 Fed. (2d), 567.

The two cases, Cudahy Packing Co. v. Narzisenfeld and Barnard v. Kellogg, supra, are conclusive, and no other authorities need be cited.

''So far as skill and knowledge of the goods are concerned, it would seem from the record that both parties were upon an equal footing as to the ability to judge of the fitness of the lumber in question for the purposes for which it was intended and there is nothing to show that the defendants, in placing the order, were relying upon the seller's skill and judgment.'' Eichler v. Kahnweiler, 178 N. Y. S., 257.

Wright purchased old second-hand pipe from a junk dealer. He was shown the pipe and had opportunity to inspect it, and it seems to us that this transaction comes directly within sub-section 3 of section 15 of the Uniform Sales Act, and the authorities above quoted, and the assignments of errors must be sustained, the judgment reversed and the action dismissed. The cost of the cause including the cost of appeal is adjudged against Wright for which execution may issue.

Faw, P. J., and DeWitt, J., concur.