## ARTEL D'ARMOND v. WM. BAKER, Administrator.

Eastern Section. August 4, 1928.

Petition for Certiorari denied by Supreme Court, October 2, 1928.

Haggard & Wright, of Rockwood, for appellant.
Harris & Evans, of Harriman, for appellee.

THOMPSON, J. On April 9, 1923, Artel D'Armond (colored) executed to James Donaldson his negotiable promissory note for $350, due fourteen months after date, with interest from date, and provisions for ten per cent attorney's fee. W. F. Holland and W. B. Ladd signed said note as sureties. Said note represented the purchase price of a second hand Republic automobile truck which Donaldson sold to D'Armond.

Prior to December 1, 1924, Donaldson died, and William Baker became the administrator of his estate.

On December 1, 1924, Baker, as administrator, sued D'Armond before a Justice of the Peace on said note. The justice rendered judgment in favor of D'Armond, and Baker appealed to the circuit court. While the case was pending in the circuit court, and on August 5, 1925, D'Armond filed the bill in this cause to restrain the action at law on said note. The bill alleged that said note had been given for the truck; that it had been procured through fraud and misrepresentations upon the part of said Donaldson; that complainant, D'Armond was a negro engaged in the hauling of lumber for hire when Donaldson in selling him the truck represented to him that he could use it to great advantage and reduce the cost of his hauling; that he (D'Armond) knew nothing about automobiles and trucks, their value, mechanism, etc., and relied solely and completely upon Donaldson's representations to him that said truck was in good condition and would perfrom said work of hauling lumber; that said representations and warranties were. false and fraudulent and were made with the intent and purpose of pawning off on complainant said truck which was old, worn and worthless and could not be used in said hauling which was the only use complainant had for it; that said truck could not be put in condition to do said work; that he undertook to redeliver said truck to Donaldson and procure the return of said note but Donaldson refused to accept said truck and surrender said note, although Donaldson, knowing said note had been procured through fraud, never in his lifetime attempted to collect it; and that said truck had been standing for a great length of time with no one claiming ownership of it, etc.

Baker filed an answer denying the allegations of fraud and misrepresentations, warranties, etc., and a cross-bill seeking a recovery of principal, interest and attorney's fees on said note. The cross-bill also made one of the sureties on said note, Ladd, a party defendant. The other surety, Holland, was not made a party defendant because he had died, and the cross-complainant did not know whether any one had ever qualified to administer upon his estate.

D'Armond and Ladd filed an answer to the cross-bill denying that they were liable on the note and standing on the allegations of fraud, misrepresentations, breach of warranty, etc., contained in the original bill. Later, they filed an amendment to their answer and averred:

"That there was no consideration for the execution of the note sued on in the cross-bill in the first instance, but even if there had been any consideration for the execution of said note at the time it was given, there was a failure of such consideration while said note was in the hands of the said James Donaldson, deceased, who

was not a holder of said note in due course, and these respondents aver that by reason of the want or failure of the consideration for said note sued on, they are in no way liable or indebted to the estate of the said James Donaldson, deceased, by reason of the execution of said note, or otherwise.''

The Special Chancellor who heard the cause made a finding of fact (incorporated in the decree) as follows:

''1. That Artel D'Armond executed and delivered the note sued on in the cross-bill to James Donaldson, deceased, as a consideration for one certain second-hand automobile truck which said D'Armond was undertaking to purchase for the purpose of hauling and delivering lumber from near Kingston, Tennessee, to Harriman, Tennessee, so as to fulfill a contract said D'Armond had entered into with one Neergaard for the hauling and delivering of said lumber.

''2. That said D'Armond's sole purpose in the purchasing of said truck was to transport said lumber pursuant to his contract, and that he had no other use for said truck except for this particular purpose.

''3. That said James Donaldson, deceased, at and before the time he sold the truck, and at the time the note sued on was given, was apprised of and knew the purpose for which said D'Armond wanted and was buying the said truck.

''4. That said truck so sold to said D'Armond was at the time it was sold wholly unfit and unsuitable to do the work of transporting or hauling said lumber, or for fulfilling the purpose for which it was sold.

''5. That said D'Armond when he negotiated for the purchase of said truck and delivered the note sued on was unacquainted and unfamiliar with the workings and mechanisms of automobile trucks, and had no experience in their use and operation.

''6. That there was no warranty either expressed or implied on the part of said James Donaldson, deceased, as to the condition of said truck or its suitability for the purpose of hauling or transporting lumber.

''7. The truck when sold was an old, worn and second-hand truck, and its defects in this respect were patent and apparent to any one.

''8. Before the consummation of the sale of said truck to said D'Armond, the said James Donaldson, deceased, employed one Roy Leffew to go with him to Kingston, Tenn., to show D'Armond the said truck.

''9. The seller of the truck was not a manufacturer or dealer in trucks.

''10. There is no competent proof of expressed warranties on the part of James Donaldson, deceased, as to the condition of the truck and its suitability for the purpose of hauling, transporting and delivering said lumber.

"11. The purchaser after buying the truck involved consulted a mechanic and ascertained it was unsuitable for the purpose for which he had bought it, and then attempted to put it in proper working repair, and retained it in his possession.

"The court, applying the law to the foregoing facts as found, dismisses the original bill and dissolves the injunction issued thereunder, and sustains the cross-bill in the case."

The decree then awarded the cross-complainant, Baker, administrator, a recovery of $350, principal, interest from April 9, 1923, amounting to $95.20, and $44.52 attorney's fees—a total of $489.72 and the costs of the cause. The complainants, D'Armond and Ladd, have appealed to this court and have assigned error.

The assignments of error accept the correctness of the first five paragraphs of the finding of fact but challenge the others and the decree thereon.

We might state here that D'Armond testified and that Baker objected to those parts of his testimony which are made incompetent by Shannon's Code, section 5598. We think the record as a whole sufficiently shows that the Chancellor treated (and correctly so) the objections as made as being sufficient to question and challenge the competency of the objectionable parts of the testimony upon the ground furnished by said Code section, and that there was no waiver on the part of Baker or failure upon his part to take advantage of the protection of said section. We think the record as a whole also indicates that the Chancellor correctly had in mind that although D'Armond was not a competent witness to testify as to any transaction with or statement by Donaldson, yet that it was permissible for him to testify as to other facts not within the specified restrictions of the section.

We agree with the first five paragraphs of the finding of facts, i. e., that D'Armond purchased the truck for the sole and only purpose of hauling the lumber in compliance with his contract with Neergaard and had no other use for said truck; that Donaldson knew that this was D'Armond's only purpose in buying the truck; that said truck was so old and worn that it was wholly unfit for said purpose; that D'Armond was wholly unacquainted and unfamiliar with the workings and mechanisms of automobile trucks and had had no experience with them, etc.

But we do not agree with the other material findings of the Chancellor.

It appears that Donaldson lived at Harriman where he kept his truck. D'Armond lived at Kingston but had a contract with one Neergaard to haul lumber from Kingston to Harriman. He was using wagons and mules to do the hauling, and the only object he had

in purchasing a truck was to use it in the hauling instead of the wagons and mules, and thus make more out of his contract with Neergaard.

We think the record sufficiently shows that Donaldson knew the sole and only purpose for which D'Armond was purchasing the truck and that said truck was so old and worn that it was totally unfit for that purpose. We think Donaldson also knew that D'Armond was unaware that said truck was so old and worn that it was unfit for the purpose for which he was buying it. The record also shows by competent evidence that Donaldson was to have the truck demonstrated to D'Armond, but that the demonstration was never made. D'Armond never saw the truck run prior to his purchase of it, and the defects were certainly latent to him—a negro who knew nothing about the mechanism of automobiles or trucks.

The truck was a 1916 model and since the sale was in 1923, it must have been about seven years old. It was a sprocket and chain drive, and the sprocket and chain were worn out. The gears—particularly the second gear—were worn out and would not stay in mesh unless the operator constantly held his foot on the gear shift lever. The teeth were worn off the gears and although there had been a mechanical effort to "shorten the gears"—which we presume meant to place them closer together so that they would stay in mesh regardless of the fact that the ends of the teeth had been worn off—they still would not stay in mesh. The result was that although the motor would run, the truck would only stand still. The sprocket and chain may not have been encased in a housing which would prevent them from being seen, but we do not think a man as ignorant of automobiles and their mechanism as D'Armond was could have observed their worn condition or could have appreciated the result thereof. The gears, of course, were encased in a housing or metal box and could not be observed. So, we are clearly of the opinion that the defects were latent to D'Armond. The record shows that the cost of putting in a new sprocket, chain and gears would have been at least $175. And the record also shows that D'Armond had the said worn out parts sent to Knoxville, and spent two days there himself, in an effort to obtain new parts but was unable to obtain them. It seems also that he was unable for some reason to even get back the worn out parts. However, they were useless because the truck would not run with them.

Upon the whole record we are convinced that this negro, ignorant as he was about automobiles or trucks, was imposed upon, and that this was the reason why Donaldson in his lifetime never tried to collect the note. And we think that all the facts—particularly as there was to have been a demonstration of the truck which never took place—were sufficient to justify us in finding that there was an express warranty of the substantial fitness of the truck.

Let us look at the situation again. Donaldson lived at Harriman, where he kept his truck. D'Armond lived at Kingston. D'Armond was using wagons and mules to perform a contract he had with Neergaard to haul lumber from Kingston to Harriman. He became interested in the purchase of the truck so as to haul the lumber with it instead of with the wagons and mules. He knew absolutely nothing about the mechanism of trucks, although he was a sensible negro and far above the average. No one representing him examined the truck for him. The truck was to be demonstrated to him. For some reason the truck was not demonstrated to him. Yet he bought it without having seen it in operation, and it was delivered to him at Kingston, but in such a worn out condition that he could not use it. Can any reasonable explanation be offered of his purchase of the truck under these circumstances except that it had been represented to him as being in at least reasonably good condition and fit for his use? We do not think so.

No form of words is necessary to create a warranty, and in general, any representations made by a seller of the state of the thing sold, at the time of the sale, will amount to a warranty. Moreover, the question of the existence of a warranty is ordinarily one of ascertaining the intention of the parties, and the existence of the intention to make a warranty is a question of fact for the determination of the jury. And a warranty may be proved either positively or circumstantially. Crescent Cotton Oil Company v. Union Gin Co., 138 Tenn., 58.

So, we find that there was a warranty and that the same was breached when the truck was delivered to D'Armond at Kingston in its worn out and useless condition.

It is true that he tried to have it repaired. It is also true that no witness other than D'Armond himself testified as to D'Armond's attempted return of the truck to Donaldson and his demand for the surrender of the note. But it is apparent from the record that although the note matured in Donaldson's lifetime, the suit was not brought by him and, in fact, was not brought by his administrator until December 1, 1924, long after the maturity of the note. Also, Donaldson resided at Harriman and D'Armond at Kingston, and, as stated, the truck had been delivered to D'Armond at Kingston. It also appears that on account of its worn out condition it could not be driven, and D'Armond therefore had no way of returning it to Donaldson at Harriman. The truck was never used by D'Armond and simply remained standing at Kingston without D'Armond claiming title or ownership of it. D'Armond did not retain possession of it. He certainly exercised no control over it after he found that he could not repair and use it.

It seems to us that D'Armond should not be repelled on account of his inability to prove by other witnesses than himself his efforts to return the truck to Donaldson at Harriman, and to procure the surrender of his note.

In our opinion, the decree of the lower court was erroneous and the same will be reversed. A decree will be entered in this court sustaining the original bill; enjoining the suit at law; dismissing the cross-bill; and taxing the said Baker, administrator, with the costs of the cause, including the appeal.

All concur.