Tom Overton, Plaintiff in Error, *v.* The State, Defendant in Error.

(*Nashville,* December Term, 1932.)

Opinion filed February 11, 1933.

W. M. Leech, for plaintiff in error.

Nat Tipton, Assistant Attorney-General, for defendant in error.

Mr. Chief Justice Green delivered the opinion of the Court.

The plaintiff in error was convicted of assault with intent to commit voluntary manslaughter and given a maximum punishment of five years in the penitentiary.

This assault was made on one J. M. Scott. Scott was standing in the entrance of a building in Dickson, from which a stairway led to the upper floors, talking to a friend of his. Overton approached the two and, with no immediate provocation, made a vicious attack on Scott with a knife, inflicting a number of severe wounds. Scott was confined to the hospital for some time and claimed that he had not fully recovered at the time of the trial.

On the trial of the case, Overton told a story about a demonstration on the part of Scott to draw a weapon as he, Overton, approached. The truth of this statement is, however, not insisted on by Overton's counsel. A number of witnesses saw the assault and all of them testified that Scott made no demonstration toward Overton previous to the attack, and never did anything except

try to get away from Overton during the attack. He was not aware of Overton's approach.

A defense of insanity is urged in behalf of Overton. At the same term of court at which he was indicted, Overton filed a plea of present insanity, which plea was found against him.

There is little conflict in the proof. It shows that Overton and Scott had been acquaintances for many years, most of the time neighbors, owning farms across the road from eath other. For a time they appear to have been friendly.

Some years ago Overton and his wife had family troubles and she got a divorce from him. We gather from the record that part of the farm was given to her as alimony and the other part left in the possession of Overton. After the divorce she lived on her part of the place and he lived on his part of the place.

Overton got it into his head that Scott instigated the divorce proceedings by Mrs. Overton. Overton also became obsessed with the idea that illicit relations existed between his wife and Scott. Likewise Overton seemed to firmly believe that Scott had tried to take his life on several occasions. There is no controversy over the fact that these notions were firmly fixed in Overton's mind, although there is no basis for any such notions on the record.

According to the medical testimony and the testimony of law witnesses, Overton was possessed by an insane delusion that Scott was maintaining a criminal intimacy with Mrs. Overton and that Scott was seeking his (Overton's) life.

Notwithstanding this delusion, the record indicates that Overton was sane in all other particulars. With the exception of the delusion mentioned, the great weight

of the proof shows that Overton's mind was normal. As stated before, he was found sane upon a jury trial. His own doctor does not say that he did not know right from wrong. Experts introduced by the State testified that notwithstanding a man may have an insane delusion, nevertheless, he can still distinguish between right and wrong.

The argument made for a reversal of the judgment below is, in substance, that Overton, being possessed by an insane delusion that Scott was seeking his life, should be judged as if Scott was actually seeking his life. That believing Scott was attempting his life, Overton was justified, according to this belief, in cutting up Scott by way of defense.

Counsel for plaintiff in error and counsel for the State both refer us to *Davis* v. *State,* 161 Tenn., 23, in which case we said:

"The right and wrong test above mentioned was authoritatively laid down in McNaughten's case, 1 C. & K., 130, 8 Eng. Reprint, 718. Under that case and those following it a homicide committed under an insane delusion is excusable, if the notion embodied in the delusion and believed to be a fact, if a fact indeed, would have excused the defendant."

We approved the foregoing in Davis' case as a sound statement of the law and we adhere thereto. If in truth Overton's delusion had led him to believe that Scott was making an attack upon him (Overton) at the time of this difficulty and if Overton had believed himself acting in self-defense at that time, he might be excused. But the record shows no such state of facts. A number of witnesses testified as to statements made by Overton just after the affray. All of these statements were to

the effect that he (Overton) had stood as much as he could, had taken all he was going to take, and one to the effect that he hoped he had killed Scott. These statements on the part of Overton show beyond doubt that he assaulted Scott because of Scott's (supposed) previous conduct—that Overton was undertaking to settle a long account, not that he acted through fear of immediate danger.

We said in *Davis* v. *State, supra,* that the defendant, in view of the imagined provocation, should not have been convicted of an offense of higher degree than manslaughter. This is as much as we could say for Overton, if he had killed his man, and he has been convicted of assault with intent to commit manslaughter.

Complaint is made because the trial judge failed to give in charge certain requests said to have been offered by the defendant below. The bill of exceptions, however, does not show that any such requests were tendered, either at the conclusion of the charge, or indeed at any other time. The motion for a new trial represents that certain requests were offered, but as we have often pointed out, the motion for a new trial is nothing but a pleading and cannot be looked to as establishing facts that it alleges. *Sherman* v. *State,* 125 Tenn., 19.

We have considered the other assignments of error but do not regard them as material.

The judgment below must be affirmed.