TALLENT et al. v. FOX.—141 S. W. (2d) 485.

Middle Section.   February 24, 1940.

Certiorari Denied by Supreme Court, June 8, 1940.

Bennett Eslick, of Pulaski, A. V. McLane, of Nashville, and Braly Craig, of Lewisburg, for plaintiffs in error.

Thurman Thompson, of Lewisburg, and David Rhea, of Pulaski, for defendant in error.

FAW, P. J.   This case is before this Court pursuant to a writ of error to the Circuit Court of Marshall County sued out by Will Tallent and Horace Sherrell, the defendants below, and to whom, for convenience, we will refer as defendants in this opinion.   We will likewise refer to W. C. Fox, the sole plaintiff and the defendant in error here, as the plaintiff.

Plaintiff Fox is a resident of Marshall County, defendant Tallent is a resident of Giles County, and defendant Sherrell is a resident of Lincoln County; but they live within a few miles of each other.

The action was begun on March 19, 1936, in the court of a Justice of the Peace for Marshall County, by the service of a warrant on defendant Tallent in Marshall County and the service of a counterpart warrant to Lincoln County upon defendant Sherrell.

The plaintiff's cause of action stated in the warrants, as originally issued by the Justice of the Peace, was ''a plea due by damages by reason of delivering 65 hogs on March 13, 1936, diseased with cholera on plaintiff's farm representing said hogs to be sound.''

The Justice of the Peace rendered judgment in favor of the plaintiff and against the defendants for $450 and costs of this suit; whereupon the defendants appealed to the Circuit Court of Marshall County, where the case was tried to a jury, and the jury returned a verdict for the plaintiff and assessed his damages at $400, and

judgment of the Court was entered accordingly. After their motions for a new trial and in arrest of judgment had been overruled, the defendants appealed in error to a former term of this Court, where (by an opinion filed and judgment entered on September 10, 1938) this Court held and adjudged that there was evidence to sustain the verdict of the jury, but that (under the pleadings on which the case had been tried below) there was reversible error in the admission of incompetent evidence and in the charge of the Court to the jury, and the judgment was reversed, the verdict was set aside, and the cause was remanded to the Circuit Court of Marshall County for a trial de novo.

In the Circuit Court, after the remand, the plaintiff, by leave of the Court (but over the objection of the defendants), amended the original warrant by certain interlineations in the statement of the plaintiff's cause of action therein, and also by the addition thereto of a "Second Count" and a "Third Count."

Designating the original warrant, as amended, as the First Count, the averments of plaintiff's cause of action in the warrant on which the trial now under review was had, are as follows:

First Count.

"To answer the complaint of W. C. Fox in a plea by damages by reason of delivering 65 hogs on March 13, 1936, diseased with cholera on plaintiff's farm, which they had sold to plaintiff, representing said hogs to be sound and healthy, for a sum under $500.00."

Second Count.

"And for this; to answer the complaint of W. C. Fox, in an action for damages in the sum of $499.99 for contracting to deliver to plaintiff, on the date of March 13, 1936, thirty or thirty-five head of hogs which had been seen by Mack Wheeler, in pen No. 1, at the stockyards in Pulaski, Tennessee, together with other hogs which were just as good, if not better, in sufficient numbers to make a total of sixty-five hogs, and instead, they substituted and delivered to plaintiff other hogs which were infected with cholera, in the place and stead of the hogs they had contracted to deliver."

Third Count.

"And for this; to answer the complaint of W. C. Fox, in an action for damages, for a deceit, in the sum of $499.99 for fraudulently deceiving the plaintiff, on or about the date of March 13, 1936, in that the defendants sold to him sixty-five hogs representing them to be the same thirty or thirty-five hogs Mack Wheeler had seen in pen No. 1, at the stockyards in Pulaski, Tennessee, together with a sufficient number of other hogs, that was just as good, if not better, added to said group, to make the total number of sixty-five hogs, and plaintiff acted upon said representation and bought the said sixty-five hogs, when in fact the hogs delivered to plaintiff, on said

date, were other and entirely different hogs, that were infected with cholera and otherwise inferior to the hogs that had been represented to plaintiff, to be.''

The Trial Judge construed the First Count as alleging ''a breach of warranty;'' the Second Count as alleging ''a breach of contract,'' and the Third Count as charging ''fraud and deceit;'' and, as a brief method of distinguishing the three counts, they have been thus characterized throughout the record and briefs.

Each of the defendants pleaded the general issue—not guilty— and defendant Sherrell also filed a special plea, verified by his oath, in which he averred ''that he was not a partner in the transaction of the sale of the hogs to W. C. Fox by Will Tallent and did not know anything about the trade, or any of the transaction, and had no connection with it in any way.''

Upon the issues thus made, the case was tried to a jury, and the jury found in favor of the plaintiff and fixed his damages at $499.99; whereupon judgment of the Court was entered accordingly against the two defendants, and in favor of the plaintiff, or $499.99 and costs of the cause.

A joint motion for a new trial on behalf of the two defendants was overruled, and thereafter a motion in arrest of judgment on behalf of defendants was likewise overruled; whereupon the defendants prayed an appeal to this Court, which was granted by the Trial Court, and a transcript of the record was thereafter filed in this Court, but, it appearing that the two defendants had filed, as and for an appeal bond, a written obligation signed by said defendants alone, without sureties, which in the opinion of the Court was not an appeal bond in contemplation of law, and did not perfect their appeal, the appeal was dismissed and the cause was stricken from the docket of this Court. However, defendants Tallent and Sherrell were granted leave to withdraw the transcript then on file in this Court, it being represented by them, through their attorneys of record, that they desired to file the record for writ of error, and the record was thereafter duly filed, and bond given, for writ of error, and the case has been submitted to this Court upon the transcript of the record, assignments of error on behalf of the defendant Tallent and Sherrell, and briefs for the parties, respectively.

There are twenty-six of the naked assignments of error, covering approximately thirty-four typewritten pages. Obviously it would extend this written opinion beyond any reasonable length, and would serve no useful purpose, to set out all of said assignments of error verbatim herein. We will dispose of the questions presented by the assignments of error in the order which seems to us most appropriate, without following the order of their assignment.

Defendants' third assignment of error is that the Court erred in permitting the plaintiff to amend the warrant after the case was

called for hearing, the said amendment stating three grounds of liability which constituted "breach of warranty, breach of contract, and fraud and deceit."

■ The assumption in the third assignment, supra, that the warrant was amended "after the case was called for hearing" is not supported by the record. It appears from the minutes of the Trial Court that, on application of the plaintiff and after argument of counsel for both plaintiff and defendants, the warrant was amended, by leave of the Court, in the manner hereinbefore stated, on *November 25, 1938,* and the case was called for trial, and the trial was begun on *December 1, 1938.* It is thus seen that counsel for defendants had six days notice of the allowance of the amendments before "the case was called for hearing."

■■ We find no error in the action of the Trial Court in allowing the aforesaid amendments to the warrant. Our statutes of jeofails are extremely liberal, and, upon application seasonably made (as in this case), a declaration may be amended by the insertion therein of any matter which would have been permissible if it had been contained in the declaration when originally filed.

It is provided by the Code, section 8565 (Shan. Code, sec. 4439; Code of 1858, sec. 2748), that: "Whenever the facts of the case entitle the plaintiff to sue for breach of contract, or, at his election, for the wrong and injury, he may join statements of his cause of action in both forms, or either."

■ Whatever may have been the rule at common law, it was permissible, by virtue of the above quoted statute, for the plaintiff to join, in separate counts of the same declaration (or warrant), actions upon the facts of the case for (1) breach of warranty, (2) breach of contract, and (3) fraud and deceit. The several counts are not repugnant or antagonistic to each other. Bible v. Palmer, 95 Tenn., 393, 294, 32 S. W., 249; Louisville & N. Railroad v. Guthrie, 10 Lea, 432, 433. Independent of statute, it was so held in Shippen v. Bowen, 122 U. S., 575, 7 S. Ct., 1283, 30 L. Ed., 1172.

In the opinion of this Court, speaking through Judge Crownover, on the former appeal of the instant case, it was said arguendo (as the point was not directly at issue) that, "the plaintiff could have amended his pleading so as to sue in one count on a breach of warranty, in another for breach of contract, and in another for fraud and deceit;" and authorities to the point were there cited as follows: Tennessee Procedure in Law Cases (Higgins and Crownover), secs. 360 and 370; 24 R. C. L., page 242, Note 18; 55 C. J., pp. 832, 833, sec. 823; Williston on Sales, 2d Ed., page 1619, sec. 646; 14 Am. & Eng. Ency. Law, 2d Ed., p. 166. See also (on amendment *after remand*) Hunter v. Litterer, 1 Baxt. 168, 170. The defendants' third assignment of error is overruled.

Through their twenty-fifth assignment of error, defendants assert that the statement in the warrant as issued by the Justice of the Peace is an insufficient statement of a cause of action and (the warrant) failed to state a cause of action even after amendment.

█ This assignment of error is a copy of the twenty-fifth ground of defendants' motion for a new trial below. The sufficiency of the statement of the cause of action in the warrant cannot be tested by *motion for a new trial.*

Defendants made substantially the same question below by their motion in arrest of judgment, but they have not, in terms, assigned error upon the action of the Trial Court in overruling their motion in arrest of judgment.

█ However, if the twenty-fifth assignment be referred to the motion in arrest of judgment, we think it obvious that each of the three "counts" in the warrant sufficiently states a cause of action.

█ Moreover, a motion in arrest of judgment "is applicable only when there is no good count in a declaration." National Telegraph Institute v. Cassanova, 3 Tenn. Civ. App., 175, 182.

█ Through their twenty-fifth assignment the defendants also seek to make the further question that, in suing for "breach of warranty" in the original warrant, the plaintiff "made an election of remedies" and could not thereafter amend the warrant by adding counts on "breach of contract" and "fraud and deceit." This might be true if the counts added by amendment were "repugnant and antagonistic" to the "First Count," but, as we have held in disposing of the third assignment of error, they were not repugnant, and there was no "election of remedies" by the plaintiff which precluded his right to the amendments allowed by the Trial Court. The twenty-fifth assignment of error is overruled.

█ The defendants' fourth assignment is that "the Court erred in overruling the defendant's motion to require an election by the plaintiff as to the grounds or cause of action they were to rely (upon), by erroneously permitting the said cause to be heard and tried upon the three counts stated in the warrant."

It appears from the bill of exceptions that, after the jury had been empaneled and sworn and plaintiff's counsel had read to the jury the warrant (including the aforesaid amendments), the defendants, through their counsel, moved the Court (in the absence of the jury) to require the plaintiff to elect on which count he was seeking a recovery. The Court overruled the motion, to which action of the Court the defendants excepted.

If, as we have held, there was no legal inconsistence in the three alleged causes of action, it would not have been proper for the Trial Court to require the election thus sought by the defendants at the beginning of the trial and before the evidence was heard. Telegraph Institute v. Cassanova, supra, 3 Tenn. Civ. App., at pages 181, 182.

Such requirement of an election would have been inconsistent with the rule under which the plaintiff was permitted to amend the warrant by the insertion of the two additional counts. The plaintiff was entitled to develop his case by competent evidence relevant to the cause of action stated in either one or more of the counts of the warrant. The fourth assignment of error is overruled.

The fifth assignment is that the Court erred in declining to grant the defendant Horace Sherrell's motion for a directed verdict in his favor made at the close of the plaintiff's evidence.

It does not appear, either upon the minutes of the Trial Court or in the bill of exceptions, that defendant Sherrell moved for a directed verdict at the close of the plaintiff's evidence. The only citation to the record (in the fifth assignment of error) is to the defendants' motion for a new trial, the fifth ground of which is substantially in the same language as the fifth assignment of error, supra. But the motion for a new trial was merely a pleading, and cannot be looked to as establishing the truth of its allegations, and it affords no sufficient evidence that there was such motion for a directed verdict at the close of the plaintiff's evidence. Overton v. State, 165 Tenn., 575, 579, 56 S. W. (2d), 740; Crosswy v. State, 157 Tenn., 363, 374, 8 S. W. (2d), 486; Tennessee C. Railway Co. v. Vanhoy, 143 Tenn., 312, 334, 226 S. W., 225; Richmond, etc., Foundry v. Carter, 133 Tenn., 489, 493, 182 S. W., 240; Sherman v. State, 125 Tenn., 19, 49, 140 S. W., 209; Frazier v. State, 117 Tenn., 430, 450, 100 S. W., 94.

Moreover, if a motion for a directed verdict on behalf of defendant Sherrell had been made and overruled at the close of plaintiff's evidence, he could not successfully assign error thereon, for the reason that he thereafter proceeded to put on witnesses in his own behalf and thereby waived his right to rely upon the motion then made. Tennessee C. Railway Co. v. Zearing, 2 Tenn. App., 451, 454, and other cases there cited. The fifth assignment of error is overruled.

The sixth assignment is that the Court erred in declining to grant defendant Sherrell's motion for a directed verdict in his favor made at the close of all the evidence.

The only citation to the record in the sixth assignment, supra, is to the motion for a new trial.

However, we find at the close of all the evidence in the bill of exceptions the following recitals:

"Mr. Eslick: Now, may it Please the Court, we desire for the record to show that we made or renewed our motion, made at the closing of the Plaintiff's proof.

"The Court: Yes sir, and that the Court overruled your motion, and you excepted.

"Mr. Eslick: Yes sir.

"Thereupon, the Court charged the jury as follows:" (Then follows the charge of the Court submitting the issues to the jury.)

Aside from the motion for a new trial the above-quoted recitals are all that we find in the record pertaining to a motion of any kind made at the close of all the evidence, and there is no record from which we can ascertain the nature or form of the "motion" to which counsel refer as "our motion made at the closing of the plaintiff's proof." Whether it was a motion for a directed verdict or for some other purpose, or, if a motion for a directed verdict, it was made on behalf of both defendants or only one of them, or was a general motion, or specified particular grounds on which it was rested (to which, on appeal, defendants would be confined. Tennessee C. Railway v. Zearing, supra, 2 Tenn. App., at pages 454, 455), are, on the record, all matters of speculation and conjecture.

The appellate court will not review the rulings of the trial court on a motion unless the record discloses the motion, or, at least, discloses, with a reasonable degree of certainty, its substance and purport. The sixth assignment of error is overruled.

Through their twenty-fourth assignment of error the defendants assert, in substance and effect, that the charge of the Court to the jury, as certified in the bill of exceptions, is not, in all respects, the charge actually given to the jury, and that there were errors in the charge as given which do not appear in the charge as it is authenticated in the bill of exceptions. The defendants sought to support this contention below by filing *as an exhibit to their motion for a new trial*, a document styled "charge of the Court which counsel for defendants insist the court reporter took down and transcribed from his notes." The bill of exceptions, authenticated by the Trial Judge, contains an elaborate charge to the jury, which is *immediately* preceded by the recital that "the Court charged the jury as follows," and, for the purposes of review in this Court, the aforesaid exhibit to the motion for a new trial cannot be considered. It was so held, on a similar state of the record, in the case of Sherman v. State, 125 Tenn., 19, 46-51, 140 S. W., 209. The twenty-fourth assignment of error is overruled.

The first, second, seventh and sixteenth assignments of error *each* embraces (and confuses) two distinct and inconsistent propositions. The first assignment is that "there is no evidence to support the verdict and the evidence preponderates in favor of the defendant and against the plaintiff."

The second assignment presents the same two propositions (*no evidence* and *preponderance of evidence*) with respect to "evidence of an express warranty in the sale of the hogs."

Through the seventh assignment it is asserted that "there is no evidence of partnership between the defendant Will Tallent and Horace Sherrell to support the verdict against defendant Horace Sherrell

and the evidence preponderates in favor of defendant Horace Sherrell and against the plaintiff."

And the sixteenth assignment, although slightly different in phraseology, is, in substance and effect, the same as the seventh assignment, supra.

"The rule requiring assignments [of error] is one of *pleading*." Wood v. Frazier, 86 Tenn., 500, 505, 8 S. W., 148, 149.

An assignment asserting that there is no evidence to support the verdict of the jury is good as an assignment of error, and requires the appellate court to ascertain whether there was *any* material and substantial evidence before the jury which would support the verdict; but an assignment that the evidence preponderates against the verdict of the jury "presents no question that can be considered by this court." Illinois Cent. Railroad v. Abernathey, 106 Tenn., 722, 728, 64 S. W., 3, 4. The latter rule has been announced and applied in so many reported cases that authorities might be multiplied almost without number.

In 3 American Jurisprudence, pages 294, 295, section 704, it is said: "As a general rule, only one point or subject should be embraced in an assignment of error. A joint assignment of error will be overruled unless sustainable on both grounds." However, we are not disposed to apply the strict rule thus stated to the four assignments of error now under consideration, but we will discard, as surplusage, the averments therein that the evidence preponderates against the verdict, and will treat these assignments as averring that there is no evidence to support the verdict of the jury—the first and second assignments relating to the verdict against both defendants, and the seventh and sixteenth assignments relating to the verdict against defendant Sherrell alone.

In such assignments of error, the phrase "no evidence" means no evidence of a material or substantial nature, as the "scintilla rule" does not obtain in this State. Brenizer v. Railway, 156 Tenn., 479, 484, 3 S. W. (2d), 1053, 8 S. W. (2d), 1099.

Twenty-nine witnesses testified at the trial below, and their testimony occupies four hundred typewritten pages of the transcript. We have carefully examined all of this testimony and find that there are sharp conflicts therein with respect to the material and controlling issues of fact. The credibility of the witnesses and the conflicts in their testimony were matters peculiarly within the province of the jury, and it is neither our duty nor our privilege, as an appellate court, to express an opinion concerning the greater weight of the evidence.

There is no occasion for us to incorporate in this written opinion a review of all the testimony of the numerous witnesses in this voluminous record. The statute (Code, Section 10620) requiring written findings of fact has no application to a law case tried to a jury, and in such case it is not important that the opinion of this Court

contain *detailed* recitals of the facts disclosed by the evidence. An assignment that there is no evidence to support the verdict of the jury presents a question of law, and not a question of fact, and, on certiorari, the Supreme Court will review the judgment of this Court upon the evidence in the record, without regard to our finding as to whether or not there is evidence to support the verdict. Darnell v. McNichols, 22 Tenn. App., pages 287, 291, 292, 122 S. W. (2d), 808; Melody v. Hamblin, 21 Tenn. App., 687, 704, 115 S. W. (2d), 237; Whitehurst v. Howell, 20 Tenn. App., 314, 329, 98 S. W. (2d), 1071. It is, therefore, unnecessary for this Court to state in the opinion filed "all the separate and disjointed facts" disclosed by the evidence. "It is proper for it to state its conclusions of facts, without setting out the successive steps by which it reaches such conclusions, except when a statement of detached facts is necessary to properly raise and present questions of law that may be involved." Anderson County v. Hays, 99 Tenn., 542, 552, 553, 42 S. W., 266, 269.

It may also be observed that it is not necessary to find that there was evidence to sustain all of the three "counts" of the warrant in this case, for the jury returned a *general verdict,* and such verdict must be applied to that count which there was evidence to sustain. Tennessee C. Railway Co. v. Umenstetter, 155 Tenn., 235, 237, 291 S. W., 452; Sledge & Norfleet v. Bondurant, 5 Tenn. App., 319, 331.

In his charge to the jury the learned Trial Judge undertook to state the contentions of the parties, respectively, and if he made a fair statement of the contentions of the plaintiff with respect to the facts applicable to either count of the warrant, and there was substantial evidence supporting such "contention" of the plaintiff, there was evidence to support the verdict, and it must be sustained, for, after a verdict of a jury has been approved by the trial judge, the appellate court takes as true the strongest legitimate view of the evidence in favor of the party successful below, and discards all countervailing evidence. Chattanooga Machinery Co. v. Hargraves, 111 Tenn., 476, 484, 78 S. W., 105; Three States Lumber Co. v. Blanks, 118 Tenn., 627, 631, 102 S. W., 79; Louisville & N. Railroad v. Hunter, 4 Tenn. Civ. App., 465, 469; Gray v. Kent, 5 Tenn. Civ. App., 519, 525; Power Packing Co. v. Borum, 8 Tenn. App., 162, 165. Authorities on this point might be multiplied indefinitely.

In the course of an elaborate charge to the jury, the Trial Judge said:

"It is the contention of the plaintiff W. C. Fox, that in March 1936, he had a transaction in regard to some hogs with the defendants; that, on March 10, 1936, he purchased from them 58 hogs, and paid for them by check drawn on the Farmers Bank of Cornersville, for $480.30, and he insists that this transaction was between him and the two defendants.

"Thereafter, on March 13, 1936, on Friday, the defendant Will Tallent came to his home in this county, and proposed to sell him some

more hogs; that the defendant Tallent represented that he had a certain number of hogs in Pulaski, Giles County, which he would sell him, the plaintiff insisting that he had not seen the hogs and desired some information about them, and he sent for Mack Wheeler, who was near plaintiff's premises, that he came and that Mr. Wheeler and the defendant Will Tallent discussed the sale of these hogs, which they did in his presence, and that the defendant Tallent on March 13th, proposed to sell him said hogs and, during this discussion, and as an inducement held out by the defendant Tallent, the defendant represented and stated to the plaintiff in the presence of Mr. Wheeler, the hogs, 65 in number, were nice, and that they were good thrifty hogs.

"It is further the contention of the plaintiff that he informed the defendant Tallent that he dd not want any sick or diseased hogs on his premises, and it was stated by Wheeler in the presence of Tallent and plaintiff, that he had seen 30 or 35 hogs in the stock yards at Pulaski, and thereupon Tallent stated that those were part of the hogs he proposed to sell, and that Mr. Wheeler stated that they were nice hogs, and that the defendant also stated that he would add more to the number, making the total number 65, which he would sell and deliver to the plaintiff.

"The plaintiff insists that the defendant Will Tallent made an express warranty as to the hogs by stating the hogs he proposed to sell and deliver were nice, good, thrifty hogs, and that he agreed to buy them, and that he did buy them and make a check to the defendant Will Tallent for $475.71, in payment for the hogs, and that this check, as plaintiff insists, went into the hands of the defendant Sherrell, and he took it to the Bank at Fayetteville, the Union National Bank, and had it applied as a payment on a note for about $600.00, which the Bank held against these defendants that is the plaintiff's insistence as to that matter. It is further insisted by the plaintiff, that the hogs were delivered on his premises, and put in his stock pen after dark, and that he did not have an opportunity to see them, and did not inspect them, and he paid for them, issuing the check for them. The next morning, he insists that he went out to the pen, and he discovered that the hogs appeared to be sick, some 12 or 15 of them piled up in a pile, did not get up, and ate very little; had the appearance of sick hogs.

"He insists that during the day, March 14, one hog died, the next day another one died, that through or in the course of three weeks, or about that time, 50 hogs died; that they were infected with cholera and were diseased, and were infected with cholera, and were diseased at the time they were delivered by the defendant Tallent.

"It is the further insistence of the plaintiff that these two defendants had bought these hogs from R. W. George and a man by the name of Chapman, and that Tallent gave his check for $410.00 for

these hogs, and that this check was signed Tallent & Sherrell, by Will Tallent.

"The plaintiff insists that the defendant Sherrell was connected with the transaction, had an interest in it. It is further insisted that the defendant Sherrell was a partner in this transaction with the defendant Tallent.

"The plaintiff insisting that the defendant Sherrell expected to share in the profits of the transaction and sale, and would have shared in the profits of sale of the 65 hogs.

"Further the plaintiff insists that he incurred considerable expense by reason of the hogs being delivered to him, on his premises, by the defendants.

"It is further the plaintiff's insistence that the hogs which Mack Wheeler had seen were not the hogs delivered to him; that the defendant Will Tallent, as plaintiff insists, did not deliver those hogs as he agreed and represented he would do, but he substituted other hogs for them, and as a result he was damaged, incurred expenses, and had to spend money on account of the sale and delivery of diseased hogs to his premises; that he had to disinfect his premises, and employ a Veterinarian, pay out money for his services, and had to incur expense in burning hogs that died. That he incurred expense in feeding and carrying water to some of the hogs which were sick, and that his business of raising hogs on his farm was injured, and he lost money by reason of having his farm infected with cholera.

"If you find the contention of the plaintiff to be supported by a preponderance of the evidence, your verdict should be in favor of the plaintiff, and against the defendants one or both."

We find that the foregoing excerpt from the Court's charge contains a fair statement of the theory, or "contentions," of the plaintiff as disclosed by his own testimony and other evidence in his behalf introduced at the trial below, and that there was material and substantial evidence to support the plaintiffs contentions thus stated. The verdict implies that the jury accepted the aforesaid evidence favorable to the plaintiff's contentions as the truth of the case, and, in our opinion, it was sufficient to support a verdict against both defendants. It results that defendants' first, second, seventh and sixteenth assignments of error are all overruled.

In their nineteenth assignment of error the defendants copied that part of the charge "as to the theory of the plaintiff in this case" (which we have hereinbefore quoted in disposing of the first, second, seventh and sixteenth assignments of error, supra), and defendants assert that the part of the charge thus quoted was erroneous, in that, (a) it "was conflicting and confusing, and inconsistent with the evidence, and thereby affected the result of the trial;" (b) it "laid too great emphasis and gave too much attention to the alleged theory of the plaintiff, all of which was prejudicial to the defendants;" (c)

that "said instructions as to said theory affirmatively showed that the Court had an opinion in the case and that this opinion was in favor of the Plaintiff," and (d) "the aforesaid instructions as to the theory of the plaintiff gave the plaintiff's theory too much attention, while on the other hand the theory of the defendants, as given was meager, brief and short."

We do not think that the charge is subject to the criticisms thus offered; but it would serve no useful purpose to discuss these criticisms here, for the reason that, if the Trial Judge did not correctly interpret and state the theories of the parties, respectively, as presented by their pleadings, proof and argument of counsel (the sources from which the trial court ordinarily deduces the respective theories of the parties), it was the duty of the defendants, through their counsel, to call the matter to the attention of the Court at the time and request a correction; *and a failure to do so was a waiver of the error.* National Hosiery & Yarn Co. v. Napper, 124 Tenn., 155, 169, 135 S. W., 780; Long v. Tomlin, 22 Tenn. App., 607, 623, 125 S. W. (2d), 171; Provident Life & Accident Insurance Co. v. Broome, 17 Tenn. App., 284, 290, 66 S. W. (2d), 1041; Elkin Motor Co. v. Ragland, 6 Tenn. App., 166, 174; Slattery v. Lea, 11 Lea, 9, 12; Malone v. Searight, 8 Lea, 91, 94; McColgan v. Langford, 6 Lea, 108, 117; Hayes v. Cheatham, 6 Lea, 1, 7. The nineteenth assignment of error is overruled.

Through their twentieth assignment the defendants assert that an excerpt from the charge of the Court (which excerpt is quoted in the assignment) was erroneous. That part of the charge thus challenged related specifically to the first count of the warrant, and the Court thereby defined an *express warranty* in accord with section 7205 of the Code, and told the jury it was for them to say, from all the facts and circumstances, whether or not the defendant Tallent made an express warranty as to the soundness of the hogs. We find no error in these instructions. E. I. DuPont De Nemours & Co. v. E. L. Bruce Co., 174 Tenn., 148, 156, 161, 124 S. W. (2d), 243; McGregor v. Penn, 9 Yerg., 74, 78; Town of Franklin v. Engineering Co., 12 Tenn. App., 434, 439; Sullivan v. Bandy, 15 Tenn. App., 411, 413, 414; Waterbury 1. Russell, 8 Baxt., 159, 161, 162; Glover v. Holman, 6 Tenn. App., 178; D'Armond v. Baker, 10 Tenn. App., 28, 33; Williston on Sales, (2 Ed.), sec. 194. The twentieth assignment of error is overruled.

Through their twenty-first assignment the defendants complain of a lengthy excerpt from the Court's charge, which excerpt is copied into the assignment. The principal criticisms of that part of the charge quoted in the twenty-first assignment are (1) that it invaded the province of the jury, and (2) that it was inherently contradictory and confusing.

We do not think the Trial Judge invaded the province of the jury by stating in his charge that "if the plaintiff told the defendant Tallent that he did not want any diseased hogs and the defendant Tallent thereupon represented to the plaintiff that the hogs which he proposed to sell the plaintiff were nice hogs and good thrifty hogs, and thereby induced the plaintiff to purchase the hogs, and the hogs delivered to the plaintiff were unsound and infected with cholera, and diseased, the defendant Tallent would be liable whether he knew the hogs thus sold and delivered were unsound and infected with cholera or not."

When the distinctions between the three causes of action averred in the three separate counts of the warrant (which were, we think, sufficiently pointed out in the charge) are observed, the charge is not contradictory or confusing, but correctly states the applicable law. The twenty-first assignment of error is overruled.

It is asserted in the twenty-third assignment that the Trial Court erred in charging the jury as follows:

"If the defendants were partners and W. C. Fox knew of the partnership and had recently dealt with them as partners in similar transactions, or a transaction, and you find that he as a reasonably prudent man had a right to think that he was dealing with the partnership on March 13, 1936, Horace Sherrell would be liable as a partner, even if as between the defendants themselves he had no interest in the transaction."

The excerpt above quoted is one of several paragraphs of the charge dealing with the law applicable to the issue of whether defendant Sherrell was or not liable as a partner of defendant Tallent.

It appears from the record, without dispute, that the two defendants had been doing business as partners in the purchase and sale of hogs and cattle since February 6, 1934, and for that purpose they had a deposit and checking account in bank in the name of "Tallent & Sherrell" at the time of the transactions involved in this case, and that defendant Tallent had delivered to the person from whom he bought said hogs on the same day he sold them to plaintiff a check drawn by him and signed Tallent & Sherrell. It also appears, without dispute, that defendant Tallent, acting for the partnership of Tallent & Sherrell, had sold to plaintiff fifty-eight hogs three or four days before the transaction here in controversy.

But defendant Sherrell contended that his partnership with Tallent was limited to "hogs or cattle for feeding purposes;" and did not extend to the purchase of stock "for immediate sale on the market."

The plaintiff's contention was, in substance, that he had no knowledge or information of such limitation upon the partnership business; that the sale by Tallent to him (plaintiff) of the hogs in question was within the apparent scope of the business of the partnership and of the agency of Tallent as a partner, and that, upon the evidence,

Sherrell was estopped to deny the authority of Tallent to bind him (Sherrell) as a partner.

"The law of partnership is a branch of the law of agency. The functions, rights and duties of partners in a great measure comprehend those of agents, and the general rules of law applicable to agents likewise apply to partners. Accordingly the liability of one partner for the acts of his co-partners is founded on the principles of agency." 20 R. C. L., page 882.

"Strictly speaking the power of a partner to act as agent is limited to transactions within the scope of the partnership business, and one partner is not bound by the unauthorized acts of a co-partner in a matter not within the apparent scope of the business of the partnership." Id., page 884.

"Third persons are not as a rule bound to inquire whether the partner with whom they are contracting is acting on the partnership account, or for his individual advantage. The use by a partner of partnership monies to satisfy his personal debts may be sustained, if made to a person having no notice of the source whence the money came. Thus a partner's endorsement of the firm name for his private purposes, without the consent or knowledge of his co-partners, will, after the note has passed to a bona fide holder, bind the firm; and in general a contract will bind the partnership when it was made by a partner within the apparent scope of his authority, and the person dealing with the partner had no knowledge that such partner intended it for his individual benefit and was acting in violation of his obligations and duties to the firm." Id., pages 885, 886.

"Third persons dealing with partners are not affected by private agreements between them of which they are uninformed, especially in the case of commercial partnerships, but may treat the partner as having authority to act in all transactions which from their nature appear to the world to be legitimately connected with the business of the partnership in which the firm is openly engaged, although in reality they exceed the terms of the partnership." Id., page 888.

"The liability of a partner for the acts of his co-partner may also rest on the principle of estoppel. Where one partner acts in the firm name without authority of his partners, the other partners may be estopped from denying his authority to do so." Id., page 891.

"There is a good presumption that each individual partner is an authorized agent for the firm and that he has authority to bind the firm in carrying on the partnership transactions, and that he is empowered to do for the firm whatever is necessary for the transaction of its business, in the way in which that business is ordinarily carried on by other people. This is especially true in the case of trading and commercial partnerships, and the presumption is sufficient to permit third persons to hold the firm liable on transactions entered into by one of the members of the firm acting apparently in its behalf and within the scope of his authority." Id., page 892.

114

The general principles above quoted from Ruling Case Law are, in substance, embraced in the Uniform Partnership Law, carried into the Code of 1932, as sections 7841 et seq. Section 7843 enumerates certain "Rules of Construction," and, among others, that "the law of estoppel shall apply under this chapter" and "the law of agency shall apply under this chapter." See, also, section 7855, providing for the liability, under specified conditions of a "partner by estoppel."

We find no error in the excerpt from the charge quoted in the twenty-third assignment of error, and that assignment is overruled.

■ The twenty-sixth assignment of error complains of three specified instructions in the charge of the Court to the jury.

Immediately following the statement in the charge of plaintiff's theory with respect to the facts of the case, the Court said: "If you find the contention of the plaintiff to be supported by a preponderance of the evidence, your verdict should be in favor of the plaintiff, and against the defendants one or both."

Then immediately after stating the contention of defendant Tallent, the Court said: "If you find that the contention of this defendant is not overturned or overcome by a preponderance of the evidence your verdict should be for the defendants."

And later, in his charge, after stating the further contentions of the defendant Sherrell, the Court said: "If you find that this contention is not overcome by a preponderance of the evidence your verdict should be in favor of the defendant Sherrell in this case."

In support of this assignment it is argued for defendants, with some elaboration, that the instructions challenged by the twenty-sixth assignment, supra, "had a tendency to tell the jury that the burden was on the defendants, not only to establish their contentions, but also to satisfy the jury by the weight or preponderance of the proof that their contentions were true."

It seems to us that these criticisms of the charge are based upon a misconception of the meaning and import of the instructions thus criticised. In our opinion, they, each and all, clearly placed the burden upon the plaintiff to show by a preponderance of the evidence that his "contentions" were true and that the "contentions" of the defendants were not true. Thus interpreted, they were obviously correct. The twenty-sixth assignment of error is overruled.

Through their assignments numbered eight to fifteen, both inclusive, the defendants assert that the Trial Judge erred in refusing to charge eight separate special requests for instructions tendered by defendants at the close of the general charge—one of said requested instructions being copied into each of said eight assignments of error.

■ It is a well settled rule that the trial judge will not be put in error for his refusal to charge a requested instruction unless it contains a statement of law applicable to the issues to be decided by the

jury, which statement has not been covered by the general charge, and the requested instruction is strictly accurate throughout.

■ Six of the defendants' aforesaid requests for instructions (numbered 1, 2, 3, 4, 5, and 7) related, in one form or another, to the doctrine of *implied warranties*, which was not involved in the case. The plaintiff sued for the alleged breach of an *express warranty*, and there was no contention on behalf of plaintiff that he was entitled to recover upon implied warranty. In his general charge the Trial Judge made it plain to the jury, by statements repeated in different connections and in different forms throughout the charge, that the plaintiff was suing on an alleged *express warranty*, and not an implied warranty, one of which statements in the Court's charge was as follows:

"The general rule of law is the buyer purchases at his peril, and there is no warranty implied by law on the part of the seller with respect to quality or soundness of the article sold, and the purchaser is not deceived by any fraudulent representation. Where the seller discloses all the knowledge and facts he possesss and the purchaser demands no warranty, the law presumes that the purchaser depends upon his own judgment in the transaction and such knowledge and facts he has obtained from the seller and from other sources."

■ The remaining requested instructions (numbered 6 and 8) presented the proposition that "plaintiff could recover only the value of the hogs on the market that the evidence shows would have died if all the hogs had been vaccinated properly." The last mentioned two requests were properly refused by the Trial Judge "because plaintiff does not sue to recover value of the hogs which were delivered by Tallent and thereafter died." The defendants' assignments of error numbered eight to fifteen, both inclusive are overruled.

■ Through their seventeenth assignment of error the defendants say that the Trial Court erred in charging the jury after they had retired to consider of their verdict and had returned into Court with a request for further instructions. This assignment is predicated upon matters which appear in the bill of exceptions as follows:

"After the jury retired they again returned to the Court room and requested the Court to read again a part of the charge which was delivered to them.

"The Court: The foreman states that the jury desires the Court to read again part of the charge. Do you have reference to the partnership matter? Foreman of the Jury: No sir.

"The Court: In reference to what matter? Foreman of the jury: Where the two men make a trade in selling sound articles, who is liable for it and one of them did not know it?

"The Court: Yes. I have charged you this: If the defendant Tallent did not know that the hogs were diseased or unsound and made no express warranty as to soundness to the plaintiff the defendant Tallent would not be liable and the defendant Sherrell would not be liable.

"If the defendant Tallent did not know the hogs were diseased and made no express warranty as to their soundness he would not be liable nor would the defendant Sherrell.

"I also charged you this: If the plaintiff W. C. Fox told defendant Tallent he did not want any diseased hogs on his premises, and the defendant Tallent represented to the plaintiff that the hogs that he proposed to sell the plaintiff were nice and good thrifty hogs, and thereby induced the plaintiff to purchase the hogs and the hogs delivered were in an unsound condition, infected with cholera and diseased, the defendant Tallent would be liable whether he knew the hogs sold and delivered were unsound and infected with cholera or diseased or not. In other words if the plaintiff said, 'I do not want any sick or diseased hogs,' and if the defendant Tallent said, 'I am going to sell you good, nice thrifty hogs,' and thereby induced W. C. Fox to buy the hogs by that statement, the defendant Tallent would be liable upon an express warranty, whether he knew they were diseased or not, and defendant Sherrell would be liable, if he was a partner in the transaction. Of course he had a right to brag on his property and boost it as a matter of opinion, but if he made an express warranty and induced a person to buy he is bound by his warranty.

"Gentlemen of the jury, you will retire and further consider your verdict."

It is seen that the Trial Court, at the request of the jury, simply repeated his instructions previously given upon one of the issues to be decided by the jury. In this there was no error.

In Swaggerty v. Catron, 1 Heisk., 199, 202, the Court said: "It is well enough, when a jury asks for a particular part of a charge upon an indicated subject, for the Court to repeat that part substantially as given." See, also, Abbott's Civil Jury Trials, (3 Ed.), page 730 et seq. The defendants' seventeenth assignment of error is overruled.

■■ The defendants' twenty-second assignment asserts that the Trial Court erred in charging the jury as follows:

"If you find in favor of the plaintiff, you will next consider his damages, and his damages would be measured and determined in this case, if you find in his favor, by his expenses reasonably and properly incurred in disposing of diseased hogs, his expenses reasonably and properly incurred in burning the hogs, in disinfecting his premises, and the services of a Veterinarian in the matter, and his expenses of disposing of the hogs otherwise, and you will further consider whether or not the plaintiff suffered loss or injury in his business of raising hogs on his farm, that is, such loss or injury as was proximately sustained by him, if any, in his business of feeding and producing hogs on his farm for and during such length of time as his farm was contaminated by cholera, if it was contaminated, as was reasonably necessary or required for disinfecting or freeing his premises from the

disease, that is, if the bringing of the disease to his farm necessarily interrupted his business of producing hogs and of making money in the business of feeding and raising hogs, then his loss from his business being destroyed would be considered by you, or should be considered by you, in estimating or fixing his damages, and only for such length of time as was reasonably required or necessary for the farm to be freed from the disease, by proper diligence on the part of this plaintiff in such matter of disinfecting or freeing the farm from the disease. If you find in favor of the plaintiff you will award to him such an amount of damages, limited by the amount sued for, as will fairly and reasonably compensate him for the injuries he has sustained.''

It is seen that the Trial Court did not include in the measure of damages the general rule applicable to a breach of a warranty of soundness in the sale of animals, to-wit: the difference between the actual value of the animals and what they would have been worth if as warranted. The plaintiff did not seek to recover such damages, as he had ''stopped payment'' on his check given for the hogs in question and he had not paid anything on the contract price.

But, upon plaintiff's pleadings and proof, he was entitled to recover of defendants such damages as he had suffered as a natural consequence of the defendants' sale to him of the hogs infected with cholera. 24 R. C. L., page 256, par. 536, and page 266, par. 545; Dushane v. Benedict, 120 U. S., 630, 7 S. Ct., 696, 30 L. Ed., 810, 811; Joy v. Bitzer, 77 Iowa, 73, 41 N. W., 575, 3 L. R. A., 184; Smith v. Green, 23 Eng. Rul. Cas., 566; Note, 40 Am. Dec., 304; Note, 34 L. R. A. (N. S.), 699; Note, 15 Ann. Cas., 1008; Annotation, 51 A. L. R., 498, 507.

In Dushane v. Benedict, supra, the Court said [120 U. S., 630, 7 S. Ct., 697, 30 L. Ed., 810]: ''The damages recoverable for a breach of warranty, or for a false representation, includes all damages which, in the contemplation of the parties, or according to the natural or usual course of things, may result from the wrongful act. For instance, if a man sells hay or grain for the purpose of being fed to cattle, or such as is ordinarily used to feed cattle, and it contains a substance which poisons the buyer's cattle, the seller is responsible for the injury [citing authorities] . So, if one sells an animal warranting or representing it to be sound, which is in fact infected with disease, he is responsible for the damages resulting from a communication of the disease to the buyer's other animals, either in an action of tort for the false representation [citing authorities]— or in an action on the warranty, either in tort [citing authorities] or even in contract [citing authorities].''

We think there was evidence which justified the above quoted charge of the Trial Court with respect to the measure of damages,

and that it was not erroneous. Defendants' twenty-second assignment of error is overruled.

The defendants' eighteenth assignment of error is that "the verdict is excessive and not responsive or supported by the evidence, all of which indicates partiality, passion and caprice on the part of the jury to the injury of the defendants."

Plaintiff is a farmer and "hog-raiser" of "forty years experience," and, on the morning following the delivery of the hogs to his farm at night, he discovered the fact that a number of the hogs thus delivered were apparently sick with cholera (which diagnosis was soon confirmed by a competent veterinarian), and plaintiff promptly demanded of defendants that they come and "take the hogs up" and get them away from his farm (stating to defendants that the hogs would "disease" his "place and hogs"), but defendants declined to do so. Fifty of the hogs in question died of cholera on plaintiff's farm, and plaintiff sold the fifteen hogs that survived for $34.87.

In his testimony plaintiff Fox enumerated items of damages resulting from delivery to his farm of the aforesaid cholera-infected hogs, which, according to his itemized estimates, aggregated $837.20. The plaintiff was examined and cross-examined at great length with respect to each and all of the aforesaid items of damage, and we think there is ample evidence from which the jury could find that the plaintiff suffered damages to the extent of $499.99 as the *direct consequence* of the delivery of said cholera-infected hogs to plaintiffs farm in the circumstances disclosed by the plaintiff's proof.

In an Annotation on the subject of "Extent of liability of seller of live stock infected with a communicable disease," in 51 A. L. R., pages 498-507, supra, numerous adjudged cases are cited as holding that, where there is a breach of an express warranty of soundness by the sale and delivery of animals infected with a communicable disease, the buyer may recover, as consequential damages, for (1) sums expended by him for veterinary service and medicine in his efforts to cure all the animals purchased and any of his other animals which became infected from the animals purchased; (2) loss of other animals of the plaintiff which became infected and died of the disease; (3) compensation to the buyer for extra feed and care of the animals purchased, due to their diseased condition; (4) compensation for the burial (burning fifty hogs in the instant case) of the animals that died from the disease; (5) the expense of disinfecting (in an effort to eradicate the disease) the premises wherein the diseased animals were kept; and (6) direct and proximate (but not speculative) injury to the business of the plaintiff.

The plaintiff testified to items of damage falling within the classes mentioned in the next preceding paragraph which, according to his estimates, aggregate a greater sum than that allowed by the jury.

"There is a clear distinction between the measure of proof necessary to establish the fact that the plaintiff has sustained some damage

and the measure of proof necessary to enable the jury to fix the amount. Formerly, the tendency was to restrict the recovery to such matters as were susceptible of having attached to them an exact pecuniary value, but it is now generally held that the uncertainty which prevents a recovery is uncertainty as to the fact of the damage and not as to its amount and that where it is certain that damage has resulted, mere uncertainty as to the amount will not preclude the right of recovery. This view has been sustained where, from the nature of the case, the extent of the injury and the amount of damage are not capable of exact and accurate proof. Under such circumstances all that can be required is that the evidence with such certainty as the nature of the particular case may permit lay a foundation which will enable the trier of facts to make a fair and reasonable estimate, and the plaintiff will not be denied a substantial recovery if he has produced the best evidence available and it is sufficient to afford a reasonable basis for estimating his loss.'' 15 Am. Juris., page 414, 415, sec. 23.

Although the nature of the instant case is such that ''the extent of the injury and the amount of damage are not capable of exact and accurate proof,'' we think the plaintiff's proof ''is sufficient to afford a reasonable basis for estimating his loss;'' and the defendants' eighteenth assignment of error is overruled.

It results that all the assignments of error are overruled and the judgment of the Circuit Court is affirmed. Judgment will be entered here in favor of W. C. Fox, the plaintiff below, and against Will Tallent and H. E. Sherrell, the defendants below, for $499.99, with interest thereon from the date of the final judgment below (February 18, 1939), and for the costs of the cause accrued in the trial courts. The costs of the writ of error will be adjudged against defendants Tallent and Sherrell and the sureties on their bond for the writ of error.

Crownover and Felts, JJ., concur.